604 So.2d 852 (1992)
Lazaro GUTIERREZ, et al., Appellants,
v.
DADE COUNTY SCHOOL BOARD, Appellees.
No. 91-1146.
District Court of Appeal of Florida, Third District.
July 21, 1992.
Rehearing Denied October 13, 1992.
Spence, Payne, Masington & Needle, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel Eaton, Miami, for appellants.
Peters, Pickle, Niemoeller, Robertson, Lax & Parsons and Yvette Rhodes Prescott and Steve Sundook, Miami, for appellee.
Before NESBITT, FERGUSON and GODERICH, JJ.
NESBITT, Judge.
Lazaro Gutierrez and his mother Teresa Chirino, plaintiffs below, appeal from a final *853 summary judgment entered in favor of the Dade County School Board (School Board), defendant below. On appeal, the plaintiffs argue that the trial court erred in concluding that, as a matter of law, any duty the School Board owed Mr. Gutierrez ended when he crossed the School Board's property line. We agree, and reverse the summary judgment entered in the School Board's favor.
On October 21, 1988, at approximately 10:00 p.m., Lazaro Gutierrez drove to the student parking lot at Miami Southridge Senior High School to pick up his girlfriend upon her return from a Southridge football game. While he waited for his girlfriend in the parking lot, he was approached by two males asking questions about his car stereo. After the conversation, Gutierrez walked away to speak to a friend. When his girlfriend returned from the football game at approximately 11:15 p.m., she got into Gutierrez's car, and they prepared to leave. While they were in the driveway leading from the parking lot to the street, one of the same males who had previously asked Gutierrez questions about his car stereo, called out for him to stop. Gutierrez alleged that at that point, while he was still in the driveway leading from the school parking lot to the public street, the other male ran up to the driver's side of his car from behind, and put a gun to his head. Gutierrez accelerated the car, whereupon the assailant shot him in the neck, causing his legs and arms to become permanently paralyzed. Because Gutierrez accelerated the car, the actual shooting occurred a few feet beyond the School Board's property line.
It is undisputed that the area where the High School is located is a high crime area. Knowing this to be true, the School Board erected a ten-foot high fence around the student parking lot as a security measure. At the time of the incident in question, the fence had a single driveway which provided the only means of ingress and egress from the parking lot to the public street. Additionally, the School Board hired off-duty police officers from its Special Investigative Unit (SIU), the School Board's police agency, to patrol the parking lot during nighttime events and activities. The officer was armed and uniformed and, pursuant to School Board policy, was required to remain in the lot until it was completely cleared after each event.
On the day of the incident, the assistant principal in charge of security contacted the SIU officer assigned to the school during the day, and asked him to ensure that an officer would be on duty for the football game that night. The SIU officer contacted a police officer who informed him that he would only be able to stay until 10:30 p.m. That officer was hired even though both men knew School Board policy would be violated since 10:30 was well before the buses carrying the people from the football game would return.
A student testified that at approximately 10:45 p.m., while he was in the parking lot awaiting the return of the buses, he observed one of Gutierrez's assailants displaying a gun to the other assailant, and later noticed that same person walking around the parking lot with the outline of the gun clearly visible in his pants pocket. The student testified that he had wanted to report what he had seen to an officer, but was unable to find one in the parking lot.
The School Board moved for summary judgment on the sole ground that it owed Gutierrez no duty of care because the actual shooting occurred a few feet beyond its property line. The trial court apparently agreed and entered summary judgment in the School Board's favor. We reverse.
A landowner is under a duty to invitees to maintain his premises in a reasonably safe condition. That duty extends to the means which the landowner has expressly provided for use by the invitees for ingress and egress. See Marhefka v. Monte Carlo Management Corp., 358 So.2d 1171, 1172 (Fla. 3d DCA 1978); Shields v. Food Fair Stores, Inc., 106 So.2d 90, 92 (Fla. 3d DCA 1958), cert. denied, 109 So.2d 168 (Fla. 1959); see generally, Wade R. Habeeb, Annotation, Liability of Owner or Operator of Parking Lot for Personal Injuries Allegedly Resulting from Condition of Premises, 38 A.L.R.3d *854 10, 23 (1971) (duty of owner or operator of a parking lot to keep the premises in a reasonably safe condition is not limited to the area of the parking lot proper, but extends to the entrances and exits of the parking lot).
In Shields, an operator of a supermarket had provided and maintained a short entrance driveway connecting its parking area to a nearby street. Supermarket customers were invited to use the driveway as a means of entering its premises from the street. The plaintiff customer alleged that this connecting driveway was negligently maintained by the defendant causing him to fall from his bicycle and become injured. In that case, as here, the defendant contended that its duty did not extend beyond its property line. We rejected that contention and, in reversing the dismissal of the complaint, stated:
The duty owed to invitees by an occupier of premises to maintain them in a reasonably safe condition includes and extends to approaches to the premises which are open to invitees in connection with their business on the premises, and which approaches are so located and constituted as to represent an invitation to visit the place of business and to use such means of approach.
While the authorities state the rule in general terms and show its application to approaches in or adjacent to buildings, there is no reason why the rule will not apply with equal force to approaches to a parking area supplied by a store-owner for use of invitees... .
106 So.2d at 92 (citations omitted).
Likewise, in Marhefka, this court reversed a dismissal of a complaint for damages for personal injuries suffered by the plaintiff when she was struck by a floating plank near the wooden steps the defendant hotel provided as a means of access to the ocean from the hotel. During high tide, debris collected around the wooden steps which the plaintiff alleged caused a dangerous condition that resulted in her injuries. Again, the defendant took the position that its duty to keep the premises in a reasonably safe condition did not extend beyond its premises, and could not be extended to the wooden steps which were not shown to be on its premises. This court stated:
[The defendant's] proposition is not applicable to the steps involved in this case where, as alleged, the steps were furnished by the hotel operator as the exclusive means of access to the ocean from its property, and when such facility represented an invitation to its guests to use that means for ingress and egress between its property and the immediately adjacent beach (at low tide) and to the ocean waters (at high tide).
358 So.2d at 1172-73 (citations omitted).
In the instant case, the School Board was under a duty to maintain its premises in a reasonably safe condition. That duty extended to the only means it provided for ingress and egress to and from the student parking lot, and did not end merely because Mr. Gutierrez's actual injury occurred a few feet beyond its property line. Because we have determined that a duty existed, we conclude that the trial judge erred in entering the order for final summary judgment.
Accordingly, the judgment is reversed and the cause remanded for further proceedings.